**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MICHAEL LANCE, Individually and as | ) | |
| Special Administrator for MYKO S. LANCE, | ) | |
| a minor, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 CV 4116 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| BETTY SHABAZZ INTERNATIONAL | ) | |
| CHARTER SCHOOL, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion to dismiss [46] Plaintiff's first amended complaint [41]. Plaintiff filed his first amended complaint after the Court dismissed Plaintiff's original complaint [1] for failure to state a claim without prejudice to repleading if Plaintiff believed that he could overcome the shortcomings identified by the Court in its February 5, 2013 Opinion and Order [36].

In his first amended complaint ("FAC"), Plaintiff has (in some places, significantly) altered the factual allegations contained in his original complaint in an effort to cure the deficiencies that the Court cited. In Plaintiff's response to Defendants' motion to dismiss, Plaintiff's attorney explains that the original complaint (prepared by a different, now deceased, attorney) contained a number of errors that she has corrected in this new version. While this may account for certain inconsistencies between the two sets of facts, the Court has some skepticism regarding the wholesale deletion of a number of previously-key incidents that are missing from

1

this new version of events, particularly since the Court identified them as fatal to Plaintiff's claims in the first instance.  The Court's expectation was that a new complaint would be filed if additional details could be added to Plaintiff's existing allegations that would allow Plaintiff to state a claim for relief, not that Plaintiff would change (or delete) the bad facts that contributed to Plaintiff pleading himself out of court the first time.  Nevertheless, the Court may consider only the first amended complaint.  *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782-83 (7th Cir. 2013) (citing *Pirant v. U.S. Postal Service*, 542 F.3d 202, 207 (7th Cir. 2008), and *Moriarty v. Larry G. Lewis Funeral Dirs., Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998)) ("[F]acts or admissions from an earlier complaint that are not included in a later complaint cannot be considered on a motion to dismiss * * * where an original complaint and an amended complaint contain contradictory or mutually exclusive claims, only the claims in the amended complaint are considered; the contradicted claims in the original complaint are knocked out."); *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions."); *Id.* (quoting *Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir. 1955)) ("An amended pleading ordinarily supersedes the prior pleading.  The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading and becomes functus officio.").  The Court will assume that Plaintiff, in fact, does have evidentiary support for all of his altered allegations in compliance with Rule 11 of the Federal Rules of Civil Procedure, particularly in light of Plaintiff's explanation for these changes.  Despite Defendants' urging that the Court sanction Plaintiff's attorney for what they characterize as insincere motives, the Court will accept well-pleaded facts as true and will draw all reasonable inferences in Plaintiff's favor.  *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

For the reasons stated below, however, the Court grants Defendants' motion to dismiss in its entirety [46]. Plaintiff's federal claims (Counts I – III) are dismissed. Plaintiff's federal claims will be dismissed with prejudice and the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts IV – VII) and dismiss those claims without prejudice.

## I.    Background[1]

Plaintiff Michael Lance ("Lance") began teaching art at Betty Shabazz Internal Charter School ("BSICS") in Chicago, Illinois in August 2007. FAC ¶ 9. Lance worked without a contract during his first two years at BSICS, because, although he had taught in Colorado for fifteen years, he did not meet Chicago Public School accreditation standards. FAC ¶ 10. Once certified, Lance executed his first employment contract with BSICS for the 2009-2010 school year, a one-school-year contract for $38,000. FAC ¶ 10. At the start of the 2010-2011 school year, Lance and BSICS signed a new contract, this time for $48,000. FAC ¶ 11. The contract[2] explicitly stated that it was for a 10-month position that would begin on August 16, 2010 and end on June 17, 2011. FAC Ex. A ¶ 1-2. The agreement gave BSICS the right to "terminate [the] Contract prior to such ending date or to extend such term of [the] Contract beyond the ending date at the Employer's sole discretion." FAC Ex. A ¶ 2. But the contract made clear that "[a]n addendum to [the] Contract shall be executed in the event of an extension to the Contract term"

---

[1] The facts are drawn from Plaintiff's first amended complaint. As noted, for the purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See *Killingsworth*, 507 F.3d at 618.

[2] Plaintiff attached a copy of his 2010-2011 contract as Exhibit A to his FAC. The Court, therefore, considers the contract as part of the FAC itself. *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) ("We consider documents attached to the complaint as part of the complaint itself. Such documents may permit the court to determine that the plaintiff is not entitled to judgment.") (internal citations omitted).

and that "[a]mendments to [the] Contract shall be in writing and signed by both parties." FAC Ex. A ¶ 11.

According to Lance, at the beginning of the 2011-2012 school year, BSICS offered him another one-year contract on the same terms that the previous year's contract provided. FAC ¶ 12. Lance, apparently desiring a better contract, rejected BSICS's offer. FAC ¶ 12. Instead, Lance and BSICS's principal, Soyini Walton ("Principal Walton"), agreed that Lance would begin the 2011-2012 school year without a contract while the parties continued to negotiate. According to Lance, he and Principal Walton agreed (orally, the complaint suggests) that "[u]ntil [a new] contract was tendered, plaintiff would remain under the terms of the 2010 contract." FAC ¶ 12. For reasons that are unspecified in Plaintiff's complaint, though, Plaintiff never ultimately signed a contract for the 2011-2012 school year. FAC ¶ 34.

The school year began on a positive note when Principal Walton agreed to allow Lance's son Myko to enroll in the kindergarten class at BSICS, despite Myko only being four years old[3]. FAC ¶ 13. But things went downhill from there. According to Plaintiff's original complaint, his troubles with BSICS began when he was exposed to "lead (asbestos fibers)" on the job and the school refused to pay his related medical bills. Compl. ¶ 28. Tensions increased when Myko was placed in a kindergarten class taught by London Jones ("Jones"), a teacher with a vendetta against Lance that spurred from Lance's rumored opposition to Jones's hiring. Compl. ¶ 36-37. To exact revenge on Lance – his original complaint alleges – Jones treated Myko poorly in class.

_____

[3] At ¶ 13 of Plaintiff's FAC, he states that his son Myko enrolled in BSICS at age four during the 2009-2010 school year. This appears to be a typo; the remainder of the complaint clarifies that Myko enrolled during the 2011-2012 school year and that all relevant events with respect to Myko occurred during his first semester at BSICS, culminating in his expulsion from kindergarten in November 2011 (while still age 4). See FAC ¶ 18, 22, 25, 26, 27, 28, 41; see also ¶ 44, 50 (alleging that Myko was expelled from BSICS on November 19, 2011 and clarifying that "Myko was age 4 at the time of the incidents set forth in this complaint."). Plaintiff's opposition to Defendants' motion to dismiss confirms that "Plaintiff Myko was an Illinois child age four who was attending BSIC * * * at the time he was expelled." Pl. Reply Br. at 7.

Compl. ¶ 36-37.  Plaintiff's first amended complaint tells a different story, however.  Lance abandons the lead (asbestos fibers) backstory and removes all references to his personal problems with Jones.  Instead, Lance blames racial discrimination for Jones's mistreatment of Myko.  FAC ¶ 15.  Because Myko was biracial, Lance now alleges, Jones yelled at Myko in class, would not let him participate in class activities, and "generally mistreated" him.  FAC ¶ 14.  Lance took issue with Jones' treatment of his son and "had Myko transferred to the other kindergarten class," taught by Shamika Hood ("Hood").  FAC ¶¶ 15-16.  His new teacher, however, treated Myko the same way.  Specifically, "Hood did not integrate Myko into the class" for several weeks, "intentionally ignored Myko," "wrote grievances against him for minor infractions," "left Myko in the classroom during recess," and "always placed him at the end of the line."  FAC ¶¶ 16-17.

Plaintiff confronted Hood on November 11, 2011.  FAC ¶ 41.  He then "met with Defendants Walton and Hood" over the course of the next eight days "about the mistreatment of Myko."  FAC ¶ 44.  At the conclusion of these meetings, on November 19, 2011, "Walton refused to allow [Myko] to return to" BSICS.  FAC ¶ 44.  Whereas Plaintiff's original complaint detailed some of the substance of these meetings, his new version of the story simply states that "Plaintiff was unable to be heard" (presumably because the Court dismissed Myko's due process claim, in part, because Lance's description of the meetings demonstrated that Lance had an adequate opportunity to be heard (*i.e.*, requisite process) prior to Myko's dismissal from BSICS).  FAC ¶ 44.  Several days after Myko's explusion, Lance met with Walton again.  FAC ¶ 45.  During the meeting, Lance requested a formal hearing, but Walton denied the request.  FAC ¶ 45.  A few weeks later, on December 6 2011, Lance filed a complaint with the U.S. Department of Education, alleging that Myko "had been treated differently and discriminated against by

Defendants London Jones and Shamika Hood * * * based on his age and race." FAC ¶ 50. The next day, on December 7, 2011, Lance "filed charges" against Principal Walton and BSICS with the Equal Employment Opportunity Commission ("EEOC") "for sexual harassment and retaliation." FAC ¶ 50. Plaintiff's complaint, however, provides no additional context or details regarding his EEOC complaint.

"As a result of Plaintiff filing the complaint [with the Department of Education], Defendant Walton began to engage in a course of conduct that was harassing and threaten [sic] to Plaintiff." FAC ¶ 25. Specifically, Lance says that on January 24, 2012 (seven weeks later), Principal Walton sent a memorandum to Lance, wherein she accused Lance of "starting an altercation with another teacher, Takaro Davis," over the accessibility of school supplies, and behaving unprofessionally by using "harsh words" in front of students during the fight. FAC ¶ 26. In the same memo, Principal Walton mentioned that Lance had recently missed four staff meetings, which took place on November 17, 2011, December 14, 2011, December 22, 2011, and January 20, 2012, and "chastised" Lance for failing to attend "Morning Circle" meetings. FAC ¶ 26. Plaintiff contends that Principal Walton had never reprimanded him before for failing to attend Morning Circle meetings and that, as an art teacher, he was not required to attend the four missed staff meetings. Lance also submits that Principal Walton "refused to listen to Plaintiff's explanation" regarding the fight with Ms. Davis. FAC ¶ 26. Lance characterizes Principal Walton's memo as "harassing and retaliation for Plaintiff filing the complaint with the Department of Education." FAC ¶¶ 24-26. On March 6, 2012, the Department of Education notified BSICS that it would begin an investigation based on Lance's allegations in his December 6, 2011 complaint. FAC ¶ 27.

On March 15, 2012, the Chicago Police Department responded to an alleged assault and battery at BSICS, after it was reported that Lance and Shamika Hood engaged in a physical altercation in the school's gymnasium "regarding some student activities." FAC ¶¶ 60-62. Lance admits that there was a fight, but maintains that Hood started it. FAC ¶¶ 61-62. After the fight, Hood reported the incident to Principal Walton, who encouraged Hood to call the police. FAC ¶ 62. Police conducted interviews but made no arrests. FAC ¶ 61. Although, according to Lance, one of the officers indicated that he believed that Lance was not at fault, Principal Walton placed Lance on administrative leave with pay the next day, March 16, 2012. FAC ¶ 28. Principal Walton informed Lance of his suspension in a written notice, wherein she specified that Lance was being placed on leave "due to recent incidents of unprofessional behavior." FAC ¶ 28. These incidents included the previous day's physical altercation with Shamika Hood and the earlier confrontation between Lance and Takora Davis. FAC ¶¶ 28, 53. Ten days later, on March 26, 2012, "Principal Walton terminated the plaintiff's employment." FAC ¶ 30. Lance requested a hearing regarding BSICS's decision to fire him, but the school denied his request. FAC ¶ 30.

On May 25, 2012, Lance brought suit against BSICS and six other defendants, alleging nineteen separate claims for violations of federal and state law. Defendants moved to dismiss for failure to state a claim under Rule 12(b)(6) or, in the alternative, for a more definite statement under Rule 12(e). In response, Lance voluntarily dismissed eleven counts, but opposed dismissal of the other eight. On February 5, 2013, the Court dismissed Lance's two remaining federal claims – one for an alleged violation of both Lance and Myko's Due Process rights in contravention of 42 U.S.C. § 1983 and another for supposed retaliation against him in violation of Title VI of the Civil Rights Act of 1964 – and declined to exercise supplemental jurisdiction

over the remaining state law claims. The Court granted Plaintiff leave to file an amended complaint within 28 days if he believed that he could overcome the problems that the Court identified.

On March 18, 2013, Lance filed the seven-count first amended complaint at issue here against BSICS, BSICS's CEO Makita Khepure, BSICS's CFO Anthony Daniels, Principal Walton, Shamika Hood, and London Jones. Count I alleges that Defendants violated Lance's due process rights by firing him without a hearing in contravention of 42 U.S.C. §§ 1981, 1983, and 1985(2). Count II alleges that BSICS violated Myko's due process and equal protection rights when the school expelled him without a formal hearing. Count III alleges that Defendants violated Title VI of the Civil Rights Acts of 1964 when (a) Principal Walton chastised Lance for missing teacher meetings and behaving unprofessionally during his confrontation with teacher Takora Davis, (b) Principal Walton encouraged Shamika Hood to call the police, following her physical altercation with Lance in the school's gymnasium, and (c) when Principal Walton fired him from BSICS. Lance contends that Principal Walton took these actions in retaliation for Lance's complaints to the Department of Education and EEOC for racial discrimination and sexual harassment, respectively. Count IV alleges state law defamation stemming from Defendants Walton, Hood, and Jones "disseminat[ing] false statements about [Lance's fight with Hood] throughout the defendant [sic] school community," which "cast plaintiff in a bad light and portrayed him as a criminal." Count V and VI allege state law breach of contract and misrepresentation, accusing BSICS of improperly firing him. Count VII alleges state law intentional infliction of emotional distress. Defendants have moved to dismiss Plaintiff's first amended complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).   In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth*, 507 F.3d at 618.   To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).   "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).   However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original).   The Court reads the complaint and assesses its plausibility as a whole.   See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

**III.     Analysis**

    **A.     Federal Claims**

        **1.     Due Process (Lance's Termination)**

Lance alleges that BSICS violated his Due Process rights in contravention of 42 U.S.C. §§ 1981, 1983, and 1985(2).  Although Lance labeled this count "Denial of Due Process in Property Interest Pursuant to 42 USC 1981, 1983, and 1985(2)," Lance specifies that his claim is for the violation of his Constitutional rights that occurred when "Defendant Walton fired Lance without a hearing."  Because Section 1983 concerns violations of one's constitutional rights (which Lance alleges), and Lance makes no substantive allegations pertaining to Sections 1981 (which deals with racial discrimination in the making and enforcement contracts) and 1985(2) (which relates to obstructing court proceedings by intimidating witnesses), the Court analyzes Lance's claim under Section 1983 only.

To assert a violation of the Due Process Clause, Plaintiff must be able to show (1) that he had a "property interest," and (2) that he was deprived of that interest without due process of law.  See *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003) (citing *Bishop v. Wood*, 426 U.S. 341, 343 (1976)).  To demonstrate a deprivation of a property interest, Plaintiff "must first establish that he had a property interest * * * of the sort that the Constitution protects." *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996).  "Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understanding that secure certain benefits and that support claims of entitlement to those benefits."  *Moore v. Muncie Police and Fire Merit Com'n*, 312 F.3d 322, 326 (7th Cir. 2002) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). For a fired public employee bringing a procedural due process claim against his employer, "[a]

property interest in continued employment 'can be created in one of two ways, (1) by an independent source such as state law securing certain benefits; or (2) by a clearly implied promise of continued employment.'" *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (citing *Phelan*, 347 F.3d at 681). Plaintiff bears the burden of proving that he had a property interest in his employment as a teacher. See *Krieg v. Seybold*, 481 F.3d 512, 520 (7th Cir. 2007).

Lance does not argue that Illinois law created a property interest in his continued employment, and indeed it did not. See *Harbaugh v. Board of Education of City of Chicago*, 716 F.3d 983, 984 (7th Cir. 2013) (noting that an Illinois public school teacher only has a constitutionally protected property interest in continued employment if he or she has achieved the status of a tenured teacher). Instead, Lance argues that Principal Walton created his property interest. In his original complaint, the Court dismissed his claim on the ground that at-will employees do not have a property interest in continued employment. See *Harris v. City of Auburn*, 27 F.3d 1284, 1286 (7th Cir. 1994) ("Our cases make clear that an at-will employee does not have a constitutionally protected property right in his continued employment."); *Burke v. Chicago School Reform Bd. of Trustees*, 169 F. Supp. 2d 843, 847 (N.D. Ill. 2001) ("[A]lthough a substantive property interest in one's job might arise if the terms of the employment are governed by contract, there is no such interest in an at-will employment situation."). Lance now attempts to skirt this hurdle by arguing that even if the fact that he was working without a contract technically rendered him an at-will employee at the time of his termination, Principal Walton made an "implied promise of continued employment" by allowing him to work under the terms of his previous year's contract. FAC ¶ 34. Though somewhat confusing, Lance's argument seems to be that Principal Walton created a justifiable expectation

that Lance would eventually sign a new contract and that, in the interim, his prior contract was verbally extended to fill the gap.

There is still a fatal problem with Lance's argument. Even if the Court were to accept that Principal Walton's verbal agreement created a justifiable expectation that the terms of Lance's prior contract governed his employment, the terms of his prior contract do not establish a clearly implied promise of continued employment. The contract explicitly provided BSICS with the right to terminate him at its sole discretion at any time, which entitled Lance to the same job security as an at-will employee. See *Harris*, 27 F.3d at 1286 (noting that language that allows an employer to fire a public employee for any reason "describes an at-will employment arrangement"). A contract, by its mere existence, does not automatically create a reasonable expectation of *continued* employment. Rather, an additional barrier, like a term "limiting discretion to terminate, is required to create a property right." *Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013). "Generally, the terms of employment must provide that termination will only be 'for cause' or 'otherwise evince mutually explicit understandings of continued employment.'" *Id.* (quoting *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003)). Lance's contract provided for just the opposite. Inherent in a contract that (1) was in effect "until [a new] contract was tendered" and (2) provided the employer with a right to terminate it at its sole discretion at any time is the employer's right not to even tender a new contract and to simply exercise the right to terminate. That is what Defendant is alleged to have done. Therefore, regardless of whether Plaintiff was an at-will employee teaching without a contract or an employee justifiably operating under the terms of his former contract, he did not have a property interest of the sort that the Constitution protects. Accordingly, Defendants' motion to dismiss Count I is granted.

## 2.     Due Process and Equal Protection (Myko's Expulsion)

Lance, on behalf of his son Myko, alleges that BSICS violated Myko's due process and equal protection rights by expelling him without a formal hearing.  As with Lance's termination claim, to survive Defendants' motion to dismiss, Lance must allege that Myko (1) had a constitutionally-protected property interest in attending BSICS, and (2) was deprived of that interest without due process.  In its February 5, 2013 Opinion and Order, the Court dismissed Myko's due process claim because Lance failed to demonstrate that his son had a property interest in attending BSICS.  Now, Plaintiff attempts to cure that defect by pointing to sections 105/5-27A, 5/1C, and 5/2-3.71 of the Illinois School Code.  105 ILCS 5/27A-5 lays out the procedures for establishing charter schools generally.  105 ILCS 5/1C pertains to the distribution of preschool funding grants (which are to be issued to districts on a competitive basis and not more than 11% of which are to go towards funding programs for children ages 0-3). And 105 ILCS 5/2-3.71 governs the state's grant program for public school districts that elect to establish "voluntary preschool education programs for children ages 3 to 5."  As Defendants point out in their motion to dismiss, none of these sections shed light on the existence of a four-year-old's property interest in attending kindergarten.  In his opposition brief, Plaintiff instead relies on Article X of the Illinois Constitution as the basis for Myko's property interest, Section 1 of which states: "The state shall provide for an efficient system of high quality public educational institutions and services.  Education in public schools through the secondary level shall be free."  Still, this says nothing about whether a four-year-old has a constitutionally property interest in attending school.

Without guidance from the parties, the Court has identified the two cases that seem most on-point here.  The first is *Goss v. Lopez*, in which the Supreme Court considered the

constitutionality of an Ohio law that allowed public schools, without any process, to suspend high school students for up to ten days. *Goss v. Lopez*, 419 U.S. 565 (1975). In response to appellants' argument that there is no constitutional right to a public education, the Court clarified that protected interests under the Fourteenth Amendment are created not by the Constitution, but by state statutes and rules entitling citizens to certain benefits. *Id.* at 572-73. Once the state creates an entitlement, therefore, due process forbids arbitrary deprivation of it. *Id.* at 573-74. Because Ohio state law provides for a free education to all students between 5 and 21 years of age, and in light of the state's compulsory attendance law, the state has created a constitutionally protected property interest, such that some process is required by the state in order to withhold it. *Id.* at 573-75. Applying *Goss* in the context of a one-day suspension of a Tennessee middle-schooler, the Sixth Circuit looked to Tennessee state law to determine if the student had a cognizable property interest in school attendance. See *Laney v. Farley*, 501 F.3d 577, 581 (6th Cir. 2007). Once the court determined that, as in *Goss*, the middle-schooler fell within the age range for which state law created an entitlement to school attendance, the court moved on to the subsequent inquiries – namely, whether the school had deprived the student of that right and, if so, whether it provided the appropriate level of process for that deprivation. *Id.* at 582-83.

In Illinois, 105 ILCS 5/10-20.12 provides that each district must "keep in operation * * * a sufficient number of free schools for the accommodation of all persons in the district who are 5 years of age or older but under 21 years of age, and to secure for all such persons the right and opportunity to an equal education in such school." This section of the Illinois Code further provides that "[i]n any school district operating on a full year school basis children who will attain age 5 within 30 days after the commencement of a term may attend school upon the commencement of such term." 105 ILCS 5/10-20.12. Here, Myko was four years old both at the

commencement of the school year in September 2011 and at the time of his expulsion on November 19, 2011 (more than 30 days after the commencement of the school year). As such, Myko does not fall within the age range for which Illinois has created an entitlement to school attendance. Lance's complaint suggests that Principal Walton made a special exception for Myko in allowing him to attend school a year early, presumably because he was the son of a teacher. This fact lends additional support to the notion that he was not *entitled* to attend the school, and the Court doubts very much that Illinois state law requires a four-year-old's attendance in such an extraordinary circumstance. Therefore, applying the analysis employed by the Supreme Court and Sixth Circuit in *Goss* and *Laney*, respectively, the Court concludes that four-year-old Myko did not have a constitutionally-protected property interest in attending kindergarten.

But even if, by virtue of Principal Walton allowing his early attendance, Myko did have a property interest in attending BSICS, the Court would still find no deprivation of his due process rights. Lance met with Principal Walton and Myko's teacher, Shamika Hood, numerous times over the course of eight days in the lead-up to Myko's expulsion. As the Seventh Circuit has explained:

> To comport with due process, expulsion procedures must provide the student with a meaningful opportunity to be heard. The proceedings need not, however, take the form of a judicial or quasi-judicial trial. As long as the student is given notice of the charges against him, notice of the time of the hearing, and a full *opportunity* to be heard, the expulsion procedures do not offend due process requirements.

*Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1010-11 (7th Cir. 2002) (internal citations and quotations omitted) (emphasis added). In the Court's view (and as supported by Lance's description of the events in his original complaint), these meetings provided Myko with sufficient process to satisfy the requirements of the Fourteenth Amendment. Lance had advance

notice of the troubles that Myko's teachers had with him in class. See *e.g.*, FAC ¶ 16 (referencing the fact that teacher Shamika Hood "consistently" wrote Myko up for minor grievances), and FAC ¶ 41 (making clear that it was Plaintiff who initiated the meetings to discuss his teacher's issues that culminated in Myko's dismissal from school). And Lance discussed these issues with Hood and Principal Walton various times over the span of the eight days prior to Myko's expulsion. Any claim by Lance that he was "unable to be heard" at these meetings is unsupported by the relevant facts and, reading the complaint as a whole, simply not plausible. Indeed, in Plaintiff's response to Defendants' motion to dismiss, he clarifies that what transpired in these meetings was "*tantamount* to not being heard for the purpose of Due Process." Pl. Reply Br. at 9 (emphasis added). This confirms the Court's interpretation of the events – Lance may, more literally, mean to say that the Defendants did not agree with his side of the story in these meetings (and that they did not *hear* him, in that sense), but these meetings provided him both with notice and a full *opportunity* to be heard, which is what *Remer* requires.

Finally, to the extent that Lance alleges that Myko was expelled because of his race in violation of the Fourteenth Amendment's Equal Protection Clause, Plaintiff has failed to cure the deficiencies identified by the Court in its February 5, 2013 Order and Opinion. As in his original complaint, Plaintiff suggests that Myko's teachers did not like him because of his race, but he has not alleged that his son was *expelled* because of his race. Moreover, Plaintiff's first amended complaint is explicit that it was Principal Walton – not London Jones or Shamika Hood, Myko's allegedly racist teachers – who made the decision to expel Myko. FAC ¶ 44. Plaintiff's first amended complaint provides a number of reasons why Principal Walton may not have been fond of Lance (such as his public altercations with other members of the faculty), but the complaint describes just a single interaction between Myko and Principal Walton: the favor that she did for

Myko in allowing his early enrollment at the school. Nowhere does Plaintiff allege that Principal Walton discriminated against Myko because of his race. Therefore, there is simply no factual support for Plaintiff's claim that BSICS expelled Myko because of his biracial ethnicity, and any claim to the contrary is belied by the fact that Lance's discrimination complaint to the U.S. Department of Education (filed a few weeks after Myko's expulsion) did not make this allegation.

Accordingly, the Court grants Defendants' motion to dismiss Count II of Plaintiff's first amended complaint.

### 3.     Retaliation

Lance filed his complaint with the U.S. Department of Education on December 6, 2011, in which he alleged that Myko's kindergarten teachers treated him differently than other students because of his young age and his race. FAC ¶ 50. Lance argues that Principal Walton terminated his employment with BSICS on March 16, 2012 in retaliation for the filing of that complaint, in violation of Title VI of the Civil Rights Act of 1964.[4] Defendants contend that Plaintiff has failed to plead a causal link between the filing of Lance's complaint and his termination, arguing that "temporal proximity" is insufficient to establish causation. Plaintiff argues that the sequence of events is enough to state a plausible claim for retaliatory conduct.

Section 601 of Title VI of the Civil Rights Act of 1964 provides that no person "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Section 602 of the Act provides that "[e]ach Federal

---

[4] Lance also filed a complaint with the EEOC on December 7, 2011, alleging "sexual harassment and retaliation" (although his first amended complaint provides no other background or context regarding the EEOC complaint). FAC ¶ 50. Because Title VI prohibits racial discrimination (and not sexual harassment), the filing of this complaint is not a protected activity within the meaning of Title VI and, therefore, his EEOC complaint cannot support a claim for Title VI retaliation.

department and agency which is empowered to extend Federal financial assistance to any program or activity * * * is authorized and directed to effectuate the provisions of section 2000d of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability * * * *" 42 U.S.C. § 2000d. The Department of Education has promulgated a regulation, 34 C.F.R. Part 100, entitled "Intimidatory or retaliatory act prohibited," which provides that "[n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part." 34 C.F.R. § 100.7(e). Courts, including this one, have interpreted these provisions to establish a private cause of action for a Title VI retaliation claim, for which there is no requirement that Plaintiff exhaust administrative remedies before bringing suit. See *Peters v. Jenney*, 327 F.3d 307, 319 (4th Cir. 2003); see also *Sawyer v. Columbia College*, 2010 WL 3081260, at *6 (N.D. Ill. Aug. 5, 2010).

To state claim for Title VI retaliation, Lance must allege: (1) that he engaged in a protected activity, (2) that Defendants took a material adverse employment action against him, and (3) that a causal connection existed between the protected activity and the adverse action. See *Peters*, 327 F.3d at 320. Here, Defendants seem to concede that Lance engaged in a protected activity by filing a complaint with the Department of Education and that his termination constituted an adverse employment action, but argue that no causal connection exists between the two. In support, Defendants cite to a Seventh Circuit case that affirmed the dismissal of retaliation claims at summary judgment where a plaintiff argued causation on temporal proximity grounds alone (*Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965 (7th Cir.

2004)) and another where intervening events broke any causal connection that may have been inferred in their absence (*Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585 (7th Cir. 2008)). Plaintiff argues that these cases are irrelevant, because they dealt with the sufficiency of allegations at summary judgment. As it turns out, the issue of retaliatory causation is a bit more complicated than the parties contemplate.

Last June, the Supreme Court addressed the causation standard applicable in the Title VII retaliation context. *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517 (2013). At issue was whether Title VII retaliation claims should be analyzed under a "but-for" causation standard or the "motivating factor" standard that at least one court of appeals was utilizing. *Id.* at 2524. Title VII of the Civil Rights Act of 1964 is narrower than Title VI (at issue here), in that it only prohibits wrongful discrimination in the employment context. *Id.* at 2522. Among other things, Title VII bans employer discrimination on the basis of race and other protected statuses. *Id.* (referring to 42 U.S.C. § 2000e-2(a)). It also prohibits employer retaliation against employees who oppose such workplace discrimination. *Id.* (citing section 2000e-3(a)). For an unlawful employment discrimination claim, Title VII requires the complaining party to establish that a protected status "was a motivating factor" for the employment practice, but the statute's anti-retaliation provision makes it an unlawful employment practice to take action against an employee *because* "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing * * * *" *Id.* at 2528. In *Nassar*, the Supreme Court concluded that the word "because" in the anti-retaliation provision very clearly requires "but-for" causation to establish a claim, while the status-based discrimination provision requires a lesser "motivating factor" causation standard, as indicated by the language of the statute. *Id.*

The Seventh Circuit has yet to address the implications of *Nassar* in the Title VI context. But just last month, in an Age Discrimination in Employment Act ("ADEA") case, our court of appeals acknowledged that *Nassar* "cautioned against displacing the traditional requirement of but-for causation unless explicit statutory language specifies a more lenient standard." *Reynolds v. Tangherlini*, 737 F.3d 1093 (7th Cir. 2013) (citing *Nassar*, 133 S.Ct. at 2528-29). In *Reynolds*, the Seventh Circuit grappled with the appropriate causation standard for claims involving the ADEA's federal-sector employment discrimination provision (29 U.S.C. § 633), which declares that federal sector personnel decisions "*shall be free*" from age discrimination. *Id.* In doing so, the Seventh Circuit discussed the Supreme Court's earlier decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) (on which *Nassar* relied heavily), where the Court announced its view that use of the word "because" in ADEA private-sector employment discrimination cases (pursuant to 29 U.S.C. § 623) equates to "but-for" causation rather than "mixed-motives" causation, which was commonly employed at that time. *Reynolds*, 737 F.3d 737 (citing *Gross*, 557 U.S. at 174). Although *Reynolds* ultimately left the decision regarding the meaning of the phrase "shall be free" (and whether it implies a lesser causation standard than the word "because") for another day, the Seventh Circuit's discussion of the issue solidifies this Court's view that "but-for" causation is the appropriate standard for Title VI anti-retaliation claims. After all, the U.S. Department of Education's Title VI anti-retaliatory regulation uses nearly identical language as the anti-retaliatory language in Title VII at issue in *Nassar*. *Compare* 34 C.F.R. § 100.7(e) ("No recipient * * * shall intimidate, threaten, coerce, or discriminate * * * because he has made a complaint, testified, assisted, or participated in any manner in an investigation * * * *") *with* 42 U.S.C. 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees * * * because

he has made a charge, testified, assisted, or participated in any manner in any investigation * * * *"). Accordingly, to survive Defendants' motion to dismiss, Lance must advance a well-pled allegation that BSICS would not have fired him "in the absence of – that is, but for" the filing of his complaint with the U.S. Department of Education. *Nassar*, 133 S.Ct. at 2525.

Drawing all inferences in the light most favorable to Lance, his complaint does not support a plausible retaliation claim under a but-for causation standard. Lance complained to the U.S. Department of Education on December 6, 2011, and Principal Walton knew that Lance made this complaint at that time. FAC ¶ 25. Lance alleges that Principal Walton then began "a course of conduct" that Plaintiff believes was in retaliation for making that complaint. Yet the first supposedly retaliatory act by Principal Walton was not taken until January 24, 2012, seven weeks later, when Principal Walton sent Lance a memo in which she chastised him for missing his fourth teacher meeting just four days prior on January 20, and for his recent altercation in front of students with a female teacher, Ms. Davis, over the availability of school supplies. FAC ¶ 26. The timing of the memo, therefore, suggests no retaliatory motive. Moreover, the action about which Lance complains (the sending of a private memo) hardly seems retaliatory in nature. Lance fails to plead any facts that suggest that this memo threatened, intimidated, coerced, or discriminated against him, as the Title VI anti-retaliation language requires. Indeed, the memo had no negative impact on his employment whatsoever. Considering the private nature of the memo, its timing, and the principal's objectively reasonable concern over teachers fighting in front of their students, the Court concludes that the sending of this memo does not support an inference that this action was taken in retaliation for a complaint that Lance filed almost two months earlier.

Lance next complains that on March 15, 2012, Principal Walton encouraged Shamika Hood, another female teacher, to call the Chicago Police Department after Hood and Lance engaged in a physical fight in the school's gymnasium over "student activities." FAC ¶ 26. The next day, Principal Walton placed Lance on administrative leave with pay. FAC ¶ 52. Ten days later, on March 26, 2012, Principal Walton decided to terminate Lance's employment. FAC ¶ 56. Lance alleges that these actions were taken in retaliation for the complaint that he filed with the Department of Education nearly three-and-a-half months earlier. Even viewing the facts in the light most favorable to Plaintiff, the Court fails to see any connection between Lance's complaint with the Department of Education and his suspension and termination. Lance effectively asks the Court to connect the dots purely based on the sequence of events (*i.e.*, that his termination followed his complaint), ignoring the three month span in between. But as the Supreme Court has noted, "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001). The Seventh Circuit has found a four-month period to be insufficient to establish a causal connection by temporal proximity alone. *Hughes v. Derwinksi*, 967 F.2d 1168, 1174-5 (7th Cir. 1992). Other Circuits have found three-month periods to be too long. See *Pascual v. Lowe's Home Centers, Inc.*, 193 Fed.Appx. 229, 233 (4th Cir. 2006); *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). Moreover, the Seventh Circuit has said that "we typically do not draw strong conclusions from the mere fact that protected speech may have preceded an adverse employment action. This is especially true where the employee has a documented history of

abusive and inappropriate behavior at work." *Cygan v. Wisconsin Dept. of Corrections*, 388 F.3d 1092, 1102 (7th Cir. 2004).

Here, reading Lance's complaint as a whole, the Court sees a teacher – who had declined to renew his contract in the hopes of negotiating better terms – embroiled in a series of increasingly troubling incidents at school. In one, he admittedly was involved in an altercation with a female teacher over access to school supplies in front of students. In another incident with a female teacher just six weeks later, the altercation became physical and the police were called. The day after the second of these events, the school placed him on administrative leave with pay and decided to fire him ten days later. Even if the Court were to infer some retaliatory component to his termination based on the fact that the Department of Education apparently notified BSICS on March 6, 2012 that it would conduct an investigation into Lance's complaint, Lance still has not alleged enough to state a claim for retaliation under a but-for standard of causation. Under that standard, the filing of the complaint is not regarded "as a cause of [Lance's termination] if the [termination] would have occurred without [the filing of the complaint with the Department of Education]." *Nassar*, 133 S.Ct. at 2525. Given the quantity and severity of the alternative reasons for Lance's termination, the Court concludes that Lance has not alleged facts sufficient to support a claim that the filing of his December 6, 2011 complaint with the Department of Education was a but-for cause of the school's decision to fire him.

Accordingly, Plaintiff has failed to state a well-pleaded claim for retaliation, and Defendants' motion to dismiss Count III is granted.

### B.    State Claims

Plaintiff has not stated a federal claim, and the Court must now decide whether to retain jurisdiction over Plaintiff's state law claims.  See 28 U.S.C. § 1367(c)(3).  The Seventh Circuit, animated by the principle of comity, consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."  *Groce v. Eli Lilly,* 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.,* 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir. 1993); see also *Wright v. Associated Ins. Co.,* Inc., 29 F.3d 1244, 1251 (7th Cir. 1994) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction * * * "); see also *Horton v. Schultz,* 2010 WL 1541265, at *4 (N.D. Ill. 2010).

In *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251–53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point to a federal decision of the state-law claims on the merits."  The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court."  *Id.* at 1251.  That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court.  See 735 ILCS 5/13–217; *Davis v. Cook County,* 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice of the state law claims also is appropriate here because the case is only at the motion to dismiss stage and substantial judicial resources have not been committed to

the eight state law counts in Plaintiff's complaint. *Wright*, 29 F.3d at 1251. Finding no justification for departing from that "usual practice" in this case, the Court dismisses without prejudice Plaintiff's state law claims without discussing their merit under state law.

**IV.    Conclusion**

For the reasons stated above, Defendants' motion to dismiss [46] is granted. Plaintiff's federal claims (Counts I – III) are dismissed. Plaintiff's federal claims will be dismissed with prejudice and the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts IV – VII) and dismiss those claims without prejudice.

Dated:  January 29, 2013

_____
Robert M. Dow, Jr.
United States District Judge